The next case this morning is 519-0418. People versus Kemmerling. Arguing for the appellant Jamaro Kemmerling is Andrew Gable. Arguing for the appellate people of the state of Illinois is Max Miller. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Andrew Gable Good morning, counsel. Max Miller Good morning, your honors. Andrew Gable Mr. Gable, are you ready to proceed? Max Miller Yes. Andrew Gable Then go right ahead. Max Miller All right, thank you. May it please the court, counsel, my name is Andrew Gable and I represent the defendant, appellant Jamaro Kemmerling. Mr. Kemmerling was convicted of armed violence and unlawful possession of a firearm by a felon and sentenced to 20 years incarceration. It was alleged that he was driving a vehicle while possessing a firearm and when the police attempted to stop the vehicle, Kemmerling allegedly fled and discarded the firearm, which the police later found in some brush in the general area of the chase. The first issue is whether or not the trial court erred in admitting the names and details of the defendant's two prior felony convictions. Mr. Kemmerling had been convicted of residential burglary and attempted possession of a firearm. Prior to the trial, the defendant offered to stipulate to these prior felony convictions. However, the trial court allowed the state to present certified dispositions and the detailed facts of these convictions. In fact, the court allowed a sheriff to testify that Kemmerling and another male forced entry into a woman's residence armed with handguns. This included the woman's name, address, and that all of this was caught on video. Based on this video, the police then obtained a search warrant the next day and found three handguns hidden in Kemmerling's home. The state introduced certified dispositions of both of these convictions. This was error as the defense had offered to stipulate to these convictions. It's settled law under the United States Supreme Court as well as the Illinois Supreme Court that for a status crime, if the defendant is willing to stipulate that the jury does not need to hear the names and details of the prior convictions. It's recognized that the state argued and the trial court also ruled that these convictions and their details could come in for modus operandi, motive, intent, or knowledge. However, none of these exceptions applied here. In fact, they were just brought in as propensity evidence to show that Mr. Kemmerling is a bad guy and that he possessed firearms in the past, so therefore he must have possessed a firearm here. There was nothing to show that this was modus operandi. There was no common scheme or design. These prior bad acts were three years before the car chase and the arrest here. There was nothing to show that it was relevant to motive. The prior bad acts did not do anything to explain why Mr. Kemmerling allegedly had a firearm for this conviction and there was nothing to show was relevant to intent, knowledge, or absence of mistake. In fact, the defense stated before trial that they weren't going to argue that Mr. Kemmerling possessed these firearms by accident or didn't know that he possessed the firearms. And essentially what the state was arguing, which they stated in closing argument, that this cuts against the argument that it was a mistake that the police found these firearms in the brush near where this car chase occurred. This had nothing to do with any mistake by the police and essentially the state is just arguing that because Mr. Kemmerling had some bad acts and highly prejudicial acts in the past that he was guilty here. This error was not harmless. The defense objected prior to trial, during trial, and included it in the motion for a new trial. Here it's recognized that there were two jail phone calls. One where which was near where the car chase happened and also that when he was arrested he didn't have his shoes on him. The shoes were far away. While these jail conversations are somewhat suspicious, they're not a true confession. Mr. Kemmerling didn't say I had a gun on me, I threw it when I was being chased by the police. The police, there was no DNA, there was no fingerprint evidence, and no officers testified they saw Mr. Kemmerling discard of any firearm. Further, in the car with Mr. Kemmerling were two other people. One person the police saw walking away from the scene with a backpack and the other person was arrested or detained with Mr. Kemmerling soon after the fact. There was no witnesses that saw Mr. Kemmerling driving down this alley where firearms were recovered and it is submitted that this error is not harmless. The second issue is about the police receiving a tip that Mr. Kemmerling possessed a silver revolver, was in a car owned by Mrs. DeVon, and had a parole warrant. None of this was proper testimony and there was no reason for any of that to come into the trial. The court ruled that and essentially that it was able to come in as investigatory procedure and the state had argued that information was necessary to explain why the police were in a certain area. Here, however, all that was needed from the police was that they saw Mr. Kemmerling commit a traffic infraction and that's why they attempted to stop him. Anything beyond that, they could have also just said that they were there based on information that they had received. There was no reason for them to say that they had received a tip that Mr. Kemmerling possessed a silver revolver and in fact here what the police eventually recovered was a silver revolver. As for the parole warrant, even if that were permissible or allowable, that would then negate the need for any other information to come in. If the police had a valid parole warrant, our position is the jury did not need to hear that, but that would also explain why they attempted to stop him. They didn't need to add anything about a silver revolver having a tip about that. As for Mr. Kemmerling being in a car owned by Ms. Devon, at trial it came out that the car did belong to Ms. Devon, so that just shows that that tip was credible or there was something to that tip, at least that was what the jury would hear. The other issue here is that whoever gave this tip never testified. Mr. Kemmerling never had the opportunity to cross-examine this tip, but the jury still heard that somebody said he had a silver revolver, which is what the police recovered. Further with this, this really can't be uncoupled with all of the damaging information that came in about the two prior convictions, including a conviction for a firearm offense, as well as the disturbing facts of first entry into a house. And the final, the third issue is that the state failed to prove the corpus delicti. I hope I pronounced that correctly. Here again, it's acknowledged there are those the jail phone calls. However, there was nothing beyond that to show that Mr. Kemmerling possessed the firearms. The police were in the general area and it's acknowledged that Mr. Kemmerling was in that general area, but the case law is clear that presence in the area is not enough. For these reasons, we are asking for this court to reverse the conviction. There are no questions. I will yield my time. Justice Moore, Justice Bond, any questions? No. No questions. Okay. Obviously, Mr. Gable, you'll have your time for rebuttal. Mr. Miller, go right ahead. May it please the court, counsel. My name is Max Miller and I represent the people of the state of Illinois. The defendant first challenges the trial court's admissions of the names and details of his two prior convictions, those being residential burglary and the attempt possession of a stolen firearm. Prior to trial, the state had filed its motion to admit the prior convictions and in its motion, the state noted that the defendant had relevant prior acts, specifically that burglary and attempt possession, along with an investigation resulting in statements which indicated that the defendant had placed firearms at a certain residence. Now, the state argued that the evidence was relevant, was permitted at the discretion of the trial court to show modus operandi, intent, identity, motive, or absence of mistake with respect to the crime. The trial court found that the first two of those convictions were relevant and were more probative than prejudicial. Now, at the beginning of the state's case in chief, Jefferson County Sheriff Jeff Bullard was called to testify. Bullard testified regarding defendant's former convictions. He reviewed the defendant's certified convictions and noted that a guilty verdict was returned. Finally, Bullard testified that during the course of the investigation, the defendant possessed a firearm. Now, as People v. Walker tells us... How was this evidence uh... similar enough to meet the requirements to show modus operandi? What specific evidence would you argue? So, specifically, the state was arguing that it was that in the commission of prior offenses in possession of a firearm and it was mostly that the specific circumstance regarding the bizarre phone conversation which the state would argue is an admission that it was using to help explain that this is a pattern of behavior and that while the defendant was engaging in this criminal conduct that he had a firearm on his person. That was the state's argument below that the that was proffered to the trial court. Isn't that common in a lot of crime that firearms are used? What's the specificity? More than that, your honor, if I could just have one moment. I would just say that again that the state noted that the defendant's history of committing bad acts that he's armed has showed most that it's just that commission. Basically, that this is used to show that on the day of fleeing the police that he was armed but just rather that in the commission of this criminal activity, it is that he had a history of possessing a firearm specifically. I'm afraid that's as best as I can answer your honor's question. Well, to follow up with Justice Moore, I think you'd have a better argument if the defendant had been charged with burglary and while armed with a firearm might show a modus operandi. But going to exactly what you just said and I'm looking at your brief, in this case, as the state argued, the convictions were presented for evidentiary reasons. The defendant was consistently armed in the past while engaging in criminal activity and the state wanted to illustrate this to the jury. How is that not propensity evidence? Simply, your honor, that the state was just trying to, aside from modus operandi, that motive and intent that because there is a dispute about the gun as we get into the third issue with the corpus delecti of the crime that the state was just trying to establish that, you know, that this gun was ultimately in the possession of the defendant at the time. Okay. When proving felon status is the only purpose for admitting evidence of a defendant's prior convictions, the defendant offers to stipulate the trial court would have used its discretion by admitting this. However, as the defendant acknowledges, the state argued for the trial court that these were relevant to these facts. Now, the admission of the certificates defendants prior to convictions combined with the testimony of Bullard make up less than 10 pages of the transcript. The first three pages simply identify Bullard as the sheriff, establishes familiarity investigations, and his identification of the defendant. In People v. Boyd, we see that other crimes evidence must not become a focal point of the trial. The detailed repetition must be narrow so as to avoid the danger of the trial within a trial, and the state would just maintain that certainly this was not the emphasis of the trial here and that, you know, that, and again, that the testimony that was provided by the state, certificates that were provided by the state, were discussed in that motion hearing prior to trial committed by the trial court. You know, ultimately, the state argued it would be using the certified copies of the convictions for evidence, as your honor pointed out. The state compared this to the fourth district's decision rate commitment of Lingle. Basically, the state held, the fourth district held the state had multiple purposes in that case for discussing underlying facts of respondents conviction, including previewing the testimony of its expert witnesses, providing context to the jury, suggesting reasonable inferences to draw from the expected evidence, and so in this case, as the state argued, the convictions were presented for evidentiary reasons. Defendant was consistently armed in the past while engaging in criminal activity, and the state wanted to illustrate this to the jury. They were not utilized as proof. I understand why the state wants to illustrate it to the jury, because it, to me, it just seems like propensity rather than anything else, but assuming it's error, it was error to put that in, is there anything the state can argue to show as harmless error? Because I think it was clearly error, but it is. Yes, your honor, if this court decides that it is error, reversal is not warranted. It's unlikely the error influenced the jury. Improper admission of other crime evidence is harmless when defendant is neither prejudiced nor denied the right to fair trial. Now, as the defendant acknowledges, the state's argument at trial was that the defendant's calls were, in essence, a confession that he possessed the revolver during the chase. Now, the evidence at trial can be summarized best as a series of consistent, you know, unrebutted testimony by police officers would provide the full context of the defendant's actions. The disputed issue was defendant's possession of the firearm, which was conclusively proven by defendant's phone call. Again, to go through this evidence, on February 19, 2019, Haney overheard a jail call between the defendant, his mother, and his stepfather about allegations made in a news article about the defendant having a weapon. In the call, the defendant was asked if he had anything on him, to which the defendant responded he had shoes on him when the chase began, but they were far away from where he was taking custody. However, when defendant was taken into custody, he was, in fact, wearing shoes. Now, while the convictions provide clarity regarding these bizarre statements made by the defendant, they were not the admission that's argued by the state. The convictions are merely tools of context which allow the state to present its concrete argument that this phone call is, in fact, an admission, and that admission of the prior convictions is not prejudicial in light of these phone call admissions. Therefore, any error would be harmless. The defendant does argue that the jury instructions combined with the specific prosecutorial prejudice of the defendant are Supreme Courts held when other crimes evidence is being introduced under common law and for limited instruction is presented does not mandate reversal. In this case, the jurors instructed evidence has been received that the defendant has been involved in conduct other than that charged in the indictment. Further, the trial court said this evidence has been received on the issue of defendant's intent, motive, knowledge, absence of mistake, and to be considered only for that limited purpose. The jury was instructed they may consider evidence of the defendant's prior conviction of the offense of residential burglary only for the purpose of determining whether the convicted felon. Now, these instructions combined with the evidence of the admission of the phone call would make any error harmless in the state's opinion. So, with the limited time, I would just quickly move on to the corpus delecti issue that the state provides sufficient corroborating evidence the defendant's admission to the firearms location. Now, our Supreme Court has explained that the primary purpose of the corpus delecti rules to ensure confession is not rendered unreliable due to improper coercion of the defendant or presence of some psychological factor. If a confession is sufficiently corroborated, then the trier fact may consider the confession along with state's other evidence. Now, the defendant says there was insufficient evidence to corroborate. However, we know that Haney informed Chief Page on February 14th that some additional information had been received indicating that a weapon was discarded in what was called a swoop alley. Haney had listened to a jail call between defendant and his girlfriend Breonna Devon. In that phone call, defendant asked Devon to contact her brother to go to the swoop alley for his football because the defendant left it there. Looking at video footage from the squad cars, Assistant Chief Robert Brand saw defendant's vehicle traveling eastbound from 15th Street and Lamar, which narrowed the search area. From that path, they saw the natural progression of this swoop. The police decided to search there as it was the only possible location that could fit that description. Now, next to some skid marks on the road that indicated a deceleration, there's a tree line with heavy vegetation where a weapon was located. Now, the police determined that was a Rossi handgun, including five large parches and a spent shell casing. So, the state's argument basically would say that it was verifiable geographic areas where the police found the state would respectfully request this court affirm. Thank you, Mr. Miller. Before we move on, Justice Moore or Justice Bond, do you have any questions for Mr. Miller? No other questions. No other questions. All right. Thank you. Mr. Gable, go right ahead with your rebuttal. Yes, your honor. The state can't overcome that the error is not harmless. There's no witnesses with Mr. Kimmerling having a firearm. No one saw him drive down that swoop alley. There's no DNA. There's no fingerprints. The gun was not found until the next day. The police were searching for this firearm, and they can't uncouple this from all the prejudicial information that came in about prior convictions, the details of the prior convictions, that he had a parole warrant, that there was an anonymous tip that he had a silver revolver, and then a silver revolver was actually recovered. The courts have any questions, I'd be happy to answer them. Otherwise, I will yield my remaining time. Justice Bond or Justice Moore? No questions. Just a brief question. You say no one saw him at the swoop alley, but didn't the police follow him and chase him all around, and they kind of backtracked or retraced their steps when they were searching for the gun? Yes, they did chase him for a while, then they testified they called off the stop following him because school was letting out. But they never chased him down that swoop alley or saw him go down that swoop alley. And that is where the firearm was recovered. He was in the vicinity of the alley. They just didn't the chase was within two to three blocks of that area. Okay, but no one saw him actually at the alley. Yes. Thank you. Anything else for counsel, Justice Moore, Justice Bond? Nothing else. Nothing else. Thank you. All right. Well, thank you, gentlemen. Obviously, we will take this matter under advisement and issue an order in due course. You guys have a great afternoon.